**SIGNED THIS: May 23, 2017**

_____
William V. Altenberger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEREMY GENE ETNIRE and | ) | Case No. 15-91010 |
| MINDY SUE ETNIRE, | ) | |
| Debtors. | ) | |

**O P I N I O N**

This contested matter is before the Court on the objection filed by the Debtors, JEREMY GENE ETNIRE and MINDY SUE ETNIRE, to Claim #9-1 filed by the Illinois

1

Department of Human Services, asserting a priority claim in the amount of $13,699.63, pursuant to section 507(a)(1) of the Bankruptcy Code, as a domestic support obligation. 11 U.S.C. section 507(a)(1).

The Debtors filed a Chapter 13 petition on September 29, 2015. The Department was scheduled as holding an unsecured claim against Mindy for overpayment of benefits in the amount of $13,699.63. The Debtors' plan, as confirmed on January 27, 2016, provides for payments of $349/month for twenty-one months, followed by payments of $545/month for thirty-nine months. The plan provides that their mortgage, vehicle and motorcycle payments would be made direct by the Debtors. No provision was made for the Department's claim to be treated as a priority claim and the Department did not object. The Department timely filed its claim on March 3, 2016. The Debtors objected to the Department's characterization of the claim as a "domestic support obligation," on January 18, 2017, and a hearing was held on March 29, 2017, at which the matter was taken under advisement.

The Department's claim arises from a child care subsidy overpayment paid to Linda Purvis, Mindy's day care provider, during two separate time periods in 2005/2006 and in 2007/2008, when the children's father was living with them, but neither his presence nor income was reported. Mindy was notified of the overpayment in October, 2008, and given an opportunity to challenge that determination.

The issue before the Court is whether the Department's claim is entitled to priority status under the Bankruptcy Code, pursuant to section 507(a)(1)(B). 11 U.S.C. section 507(a)(1)(B). The Bankruptcy Reform Act of 1994 amended section 507(a)(7) to provide a

2

new priority for family support obligations, integrating language from section 523(a) (5) of the Bankruptcy Code, 11 U.S.C. section 523(a)(5), dealing with the nondischargeability of support claims.  As those provisions stood, prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), allowed claims for alimony, maintenance or support owed to a debtor's spouse, former spouse or child, arising in connection with a separation agreement, divorce decree or other court order, made in accordance with state law by a governmental unit, or arising in a property settlement agreement, were entitled to seventh priority under section 507(a)(7), except to the extent that such debts were assigned to another entity.  Section 523(a)(5), with language nearly identical to section 507(a)(7), also excluded from nondischargeable debts, assigned support claims, but made an "exception" from that exception, for support debts assigned to a governmental entity.  Under both provisions, nondischargeable debts and claims entitled to priority were limited to obligations owing to a debtor's spouse, former spouse or child of the debtor, resulting from a legal duty to support arising out of a matrimony or family relationship.

BAPCPA instituted a new definition of "domestic support obligation," which replaced references to "alimony, support or maintenance" throughout the Bankruptcy Code.[1]  A "domestic support obligation," is defined in section 101(14A), as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on

---

[1] The term "domestic support obligation" has an impact throughout the Bankruptcy Cody on issues of discharge, the automatic stay, priorities, the means test, and the calculation of disposable income in a Chapter 13 case. Section 523(a)(5) currently provides an exception from discharge for any debt for a "domestic support obligation." The Department has not sought a determination that its debt is excepted from discharge and that issue is not presently before the Court.

>
> that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A)  owed to or recoverable by—
>   (i)  a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii)  a governmental unit;
> (B)  in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the order for relief in a case under this title, by reason of applicable provisions of—
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or
>   (iii)  a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D)  not assigned to a nongovernmental entity . . . .

11 U.S.C. section 101(14A).  The purpose behind the addition of the defined term "domestic support obligation" was to grant more protection to creditors owed support debts. *In re Trentadue,* 527 B.R. 328 (Bankr. E.D. Wis. 2015) *aff'd* 837 F.3d 743 (7th Cir. 2016). The definition significantly expands the scope of nondischargeable support obligations by specifically including "assistance provided by a governmental unit" in reference to debts "in the nature of alimony, maintenance or support." In addition to preserving the requirement the debt be owed to or recoverable "by a spouse, former spouse, or child of the debtor" the definition adds an alternative that the debt be owed or recoverable by a "governmental unit."  The change was regarded as significant.

> Thus any doubt that might exist under the former statute that a debt held by a governmental unit but one never owing to or recoverable by the spouse of child might be dischargeable is erased.  Debts owing to or recoverable by the governmental unit that provided support assistance would be excepted from discharge even if the spouse of child who received

4

that assistance could not recover the debt individually.

William Houston Brown & Lawrence R. Ahern III, *2005 Bankruptcy Reform Legislation with Analysis* 62-63 (2005).

BAPCPA also amended the priority scheme under section 507(a), dividing domestic support obligations into two types. Section 507(a)(1) now provides:

> (a) The following expenses and claims have priority in the following order:
> (1) First:
>> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.
>> (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C. §507(a)(1)(A) and (B) (West 2016). A first priority position is granted to domestic support obligations which are owed to or recoverable by a spouse, former spouse, or child of the debtor, or other identified relationships standing in loco parentis to a child of

the debtor, under section 507(a)(1)(A). This higher priority is also includes claims owed to a governmental entity through assignment. First priority under section 507(a)(1) is also granted to domestic support obligations owed directly to or recoverable by a governmental unit under section 507(a)(1)(B), subject to claims under section 507(a)(1)(A).[2] Though it broadened the scope of domestic support creditors by including debts owed or recoverable by a child's parent, legal guardian, or responsible relative as well as a governmental unit, the term "domestic support obligation," did not change the standard for whether an obligation is in the nature of support. Hence, pre-BAPCPA case law interpreting whether obligations imposed are in the nature of support continues to be relevant and persuasive.

The Department contends that its claim fits within the definition of a domestic support obligation in section 101(14A) because the debt it seeks to collect (1) is owed to a governmental unit; (2) is in the nature of support for a child of the debtor; (3) was established before the filing of the petition in accordance with applicable nonbankruptcy law; and (4) is not assignable to a nongovernmental entity. In support of its position, the Department relies on *In re Schauer*, 391 B.R. 403 (Bankr.E.D.Wis. 2008), a case also involving a state's claim against the debtor for an overpayment of child care benefits. Determining that the debt fell within the definition as being "in the nature of assistance provided by a governmental unit" to a child of the debtor and that it related to support, the court concluded that the state's claim clearly qualified as a

---

[2] Under section 507(a)(1)(B), priority status is conditioned on the funds being applied and distributed in accordance with applicable nonbankruptcy law.

6

domestic support obligation. In so ruling, the court noted that Congress intended to broaden the types of support obligations not subject to discharge, concluding that the new definition of domestic support obligation, "encompasses *all* debts to a governmental unit related to support." 391 B.R. at 434 (emphasis in original).

The Department also relies upon *Wisconsin Dept. of Workforce Development v. Ratliff*, 390 B.R. 607 (E.D.Wis. 2008). In *Ratliff*, the district court, reversing the bankruptcy court, determined that a debt owed for the overpayment of food stamps which were in fact used to support the debtor's children was in the nature of support, and as payable to a government unit, constituted a domestic support obligation. The court noted that the amount of the food stamps allocated to the debtor was based, in part, on the number of her children residing with her, and that an obligation providing a necessity such as food, is a debt in the nature of support.

In response, the Debtors maintain that Illinois courts have not interpreted the "nature of support" requirement so broadly as to include government payments of the type at issue here, but have limited the interpretation to traditional support and alimony payments, guardian ad litem and attorney fees. The Debtors characterize the benefit here as a "welfare benefit for the working poor," in the nature of an "underemployment benefit, and liken it to unemployment compensation which is treated as a general, unsecured debt. They suggest that a ruling in favor of the Department would embark down a slippery slope resulting in unfair and unintended consequences upon poor working parents in the event of an overpayment of all kinds of governmental subsidies, saddling those debtors with a nondischargable debt, thereby thwarting their fresh start.

7

Interpretation of a statute begins "with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) In interpreting the language of a statute, the words used are given their ordinary meaning. *Moskal v. United States*, 498 U.S. 103, 108 (1990). A cardinal canon of statutory interpretation mandates that courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004). When the words of the statute are unambiguous, statutory construction begins and ends with the plain language of the statute. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Judicial inquiry is then at an end. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).

There is no mistaking the plain meaning of Section 101(14A)(A)(ii). In straightforward language, a domestic support obligation includes a debt owed to or recoverable by a governmental unit. Mindy's debt for overpayment of the child care benefits falls directly within this ambit. Consequently, the Court's "interpretive function" comes to an abrupt halt. That leaves for determination whether the child care subsidy is a debt "in the nature of support (including assistance provided by a governmental unit)" of Mindy's two children.

As a general matter, actual, reasonable and necessary child care expenses for a working parent are in the nature of support for a child. *Matter of Marriage of Scott*, 263 Kan. 638 (1998); *Holtzleiter v. Holtzleiter*, 944 N.E. 2d 502 (Ind. Ct. App. 2011). Section 505(a)(2.5) of the Illinois Marriage and Dissolution of Marriage Act provides that in addition to setting the amount of child support pursuant to the guidelines and factors, the court may order either or both parents owing a duty of support to contribute to

8

various expenses including health needs not covered by insurance, child care, education and extracurricular activities. 750 ILCS 5/505(a)(2.5). That this subsidy relates solely to the support of Mindy's children is abundantly clear from an examination of the Illinois statute providing for the child care payment. Article 9A-1 of the Illinois Public Aid Code provides recipients of public aid education, training and job programs to enable them to become self-sufficient. In recognition that families with children need child care in order to work, child care benefits are provided under section 9A-11 to working families with very low incomes. 305 ILCS 5/9A-11. As a general rule, child care services are restricted to children under age 13. 89 Ill.Adm. Code 50.230. This Court's conclusion that the Department's claim against Mindy for reimbursement of a child care subsidy is a domestic support obligation entitled to priority pursuant to section 507(a)(1)(B) is made on firm ground.

The Debtors are quite correct that this result represents a departure from prior Illinois bankruptcy decisions arising under the former statutory provisions. The definition of "domestic support obligations" has significantly broadened the scope of nondischargeability of support obligations and the priority treatment to be afforded those obligations. Nonetheless, the requirement that the debt actually be in the nature of alimony, maintenance or support, remains and serves as a safeguard against illimitable application of the statute. In objecting to the Department's claim, the Debtors do not specifically address the nature or the support function of the assistance payment, and this Court rejects their characterization of the subsidy as a general "underemployment benefit," as the entirety of the payment was based on actual child care costs incurred by

9

Mindy.  Given the plain language of the statute, the slippery slope concerns voiced by the Debtors are not appropriate judicial considerations.

###